UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD DOUGLAS BURKE,

        Plaintiff,                              Civil Action No. 12-10193

       v.                                   District Judge Gerald E. Rosen
                                              Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION TO
## DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [9] AND
## GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [10]

Plaintiff Harold Burke appeals Defendant Commissioner of Social Security's denial of his application for Disability Insurance Benefits. (*See* Dkt. 1, Compl.; Transcript ("Tr.") 14.) Before the Court for a Report and Recommendation (Dkt. 2) are the parties' cross-motions for summary judgment (Dkts. 9, 10). Plaintiff asserts primarily that the disability decision must be reversed because the vocational expert provided flawed testimony. (Dkt. 9, Pl.'s Mot. Summ. J. at 9-10.) For the reasons set forth below, this Court disagrees. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 9) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 10) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## I. BACKGROUND

Mr. Burke was 51 years old on the date he alleges he became disabled. (*See* Tr. 14, 150.) Plaintiff has a high-school education. (Tr. 256.) His past work involves engine testing and repair for an automotive company. (Tr. 51-54.) In the fall of 2008, Plaintiff injured his right eye, which ultimately resulted in complete vision loss in that eye. (Tr. 162.) Primarily for this reason, and because of anxiety and/or depression related to the loss of vision, Plaintiff asserts that he cannot sustain full-time competitive employment.

### A. Procedural History

On January 12, 2010, Plaintiff applied for Disability Insurance Benefits ("DIB") asserting that he became unable to work on October 21, 2009. (Tr. 14.) The Commissioner initially denied Plaintiff's disability application on April 21, 2010. (Tr. 14.) Plaintiff then requested an administrative hearing, and on October 1, 2010, he appeared with counsel before Administrative Law Judge Robert Erickson, who considered his case *de novo*. (Tr. 32-60.) In a January 28, 2011 decision, the ALJ found that Plaintiff was not disabled. (*See* Tr. 14-24.) The ALJ's decision became the final decision of the Commissioner on November 30, 2011 when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff filed this suit on January 16, 2012. (Dkt. 1, Compl.)

### B. Medical Evidence

#### 1. Plaintiff's Right-Eye Impairment

In late October or early November 2008, Plaintiff was poked in his right eye and suffered blurred vision. (*See* Tr. 162.) Dr. Van Stavern diagnosed Plaintiff with neuroretinitis ("inflammation affecting the optic nerve head and the posterior pole of the retina, with cells in the

nearby vitreous, usually producing a macular star," Stedman's Medical Dictionary *neuroretinitis* (27th ed. 2000)). By early 2009, however, Plaintiff's vision in his right eye had improved to about 20/30. (Tr. 198; *see also* Tr. 211-12, 222, 224.)

In April or May 2009, however, Plaintiff woke up with vision loss in his right eye. (Tr. 198, 204.) In June 2009, Dr. Joel Miller concluded that Plaintiff had developed neovascular glaucoma in his right eye. (Tr. 160.) Dr. Miller referred Plaintiff to Dr. Les Siegel for an "urgent glaucoma evaluation." (*Id.*) In July 2009, Dr. Siegel implanted a tube in Plaintiff's right eye. (Tr. 196.) Despite the surgery, in September 2009, Dr. Siegel remarked that Plaintiff's vision in his right eye remained poor. (Tr. 196.) Plaintiff's vision in his left eye, however, was 20/20. (Tr. 196.)

In April 2010, Plaintiff saw Dr. Daniel Zuckerbrod, for a "complete opthalmologic examination." (Tr. 234.) Dr. Zuckerbrod found that Plaintiff's "best corrected visual acuity" was 20/15 in the left eye, but that same measure of the right eye was "no light perception." (*Id.*) He concluded that Plaintiff "will never have useful vision with the right eye. The goal for the right eye is to ensure that it is comfortable. Fortunately, the left eye is healthy and has a good prognosis." (*Id.*)

### 2. *Plaintiff's Mental Impairment*

In September 2010, Plaintiff had a mental-health intake assessment with Don Jarvi, a therapist. (Tr. 253-55.) Plaintiff reported restlessness, decreased concentration, sleep disturbance, persistent worry and apprehension, and anxiety-induced distress on a near-daily basis. (Tr. 253.) Plaintiff reported that his symptoms had existed for about one year and were attributable to his right-eye blindness. (*Id.*) Mr. Jarvi found that Plaintiff's short- and long-term memory were intact and that his judgment and insight were good. (*Id.*) His assessment was generalized anxiety disorder,

3

and he assigned Plaintiff a Global Assessment Functioning score of 53. (Tr. 255.)[1]

In December 2010, Dr. L. Imasa, a psychiatrist, examined Plaintiff for Michigan's Disability Determination Service. (Tr. 256-61.) Plaintiff indicated that he had problems sleeping and had nightmares. (Tr. 257.) Plaintiff also reported low energy and low motivation, poor concentration and memory, crying spells, feeling at times like giving up hope, and anxiousness. (Tr. 257.) Dr. Imasa performed a mental-status exam and diagnosed major depressive disorder, generalized anxiety disorder, and provided a rule-out diagnosis of depressive disorder due to general medical condition. (Tr. 258.) He assigned Plaintiff a GAF score of 50. (*Id.*)[2] Dr. Imasa also completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" form. (Tr. 259-61.) There, Dr. Imasa indicated that Plaintiff had mild limitations in his ability to understand, remember, and carry out simple instructions, and that Plaintiff had mild limitations in his ability to make judgments on simple work-related decisions. (Tr. 259.)

---

[1]A GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* ("*DSM-IV*" ), 30-34 (4th ed., Text Revision 2000). It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 32.
    A GAF of 51 to 60 corresponds to "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV* at 34.

[2]A GAF score of 45 to 50 reflects "serious symptoms (e.g. suicidal ideation, severe obsession rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *DSM-IV* at 34.

**C. Testimony at the Hearing Before the ALJ**

*1. Plaintiff's Testimony*

At the administrative hearing before ALJ Erickson, Plaintiff testified to symptoms and limitations caused by his right-eye condition. He stated that he had glaucoma in his right eye and that, if he cooked on a grill, he would have to avoid getting smoke in that eye. (Tr. 40.) He also stated that he had difficulty traversing grocery store aisles because of his vision problem. (Tr. 42.)

Plaintiff's counsel asked Plaintiff if he had experienced "any difficulty with what is considered cognitive functioning; like memory, concentration, paying attention to things, completing tasks, stuff like that?" (Tr. 50-51.) Plaintiff responded, "Yes, I have." (Tr. 51.)

*2. Medical Expert's Testimony*

A medical expert also testified at Plaintiff's administrative hearing. Because he testified via telephone, however, some of his testimony was not audible, and thus is not transcribed. (*See e.g.*, Tr. 45.) The transcript does reflect, however, that the medical expert testified that Plaintiff could not see to his right, had problems with depth of field, and should avoid exposure to unguarded heights and hazardous work environments. (Tr. 47.)

*3. The Vocational Expert's Testimony*

A vocational expert also testified at Plaintiff's hearing before the ALJ. The VE first stated that Plaintiff's engine testing and repair work was classified as medium, unskilled work, with a Dictionary of Occupational Titles ("DOT") Specific Vocational Preparation ("SVP") rating of 2, but that Plaintiff actually performed the work at the heavy exertional level. (Tr. 54.) Plaintiff's past work as a golf-course groundskeeper was also classified as medium, unskilled work, with an SVP of 2. (*Id.*)

The ALJ then solicited testimony from the VE to determine whether jobs would be available for various hypothetical individuals. The ALJ first asked about someone who could not climb ladders, was limited in his ability to see, "particularly since he has no sight at all out of the right eye," could not quickly see objects coming from the right, had limited peripheral vision, was capable of only frequent depth of field vision, had to avoid concentrated exposure to dusty environments, had to avoid all exposure to hazardous work environments and unprotected heights, but had no manipulative limitations. (Tr. 55-56.) The VE testified that such an individual could not perform Plaintiff's past work because the moving machinery would be contrary to the hazardous environment limitation and the dust would be contrary to the clean-air limitation. (Tr. 56.)

The ALJ next asked the VE to assume a second hypothetical individual, the same as the first except that the second individual was Plaintiff's age and had Plaintiff's education and work experience. (Tr. 53.) The VE testified that the individual could perform light, unskilled work as a small-products assembler (DOT 706.684-022), as a hand packager (DOT 559.687-074), and, after the ALJ eliminated one example job because it placed too much strain on the eyes, as an information clerk (DOT 237.367-018). (Tr. 57.) The VE said that there were 2,500, 2,500, and 4,000 such positions in Southeastern Michigan, respectively. (*Id.*)

## II. THE ADMINISTRATIVE LAW JUDGE'S FINDINGS

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) and Supplemental Security Income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

> expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ Erickson found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of October 21, 2009. (Tr. 16.) At step two, he found that Plaintiff had the following severe impairments: "blindness (right eye only) status post parainfectious

neuroretinitis, hypertension, and affective disorder." (*Id.*)  Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment.  (Tr. 16-17.)  Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform

> a "medium" level of work, as defined in 20 CFR 404.1567(b), inclusive of no ability to climb ladders, no ability to see out of the right eye, limited peripheral vision, no more than frequent field of vision, avoidance of all exposure to hazardous work environments and unprotected heights, avoid concentrated exposure to dust, and a limitation to simple, repetitive tasks.

(Tr. 17.)  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (Tr. 21-22.)  At step five, the ALJ found that sufficient jobs existed in the national economy for someone of Plaintiff's age, education, work experience, and residual functional capacity.  (Tr. 22-23.)  The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act.  (Tr. 23.)

## III. STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  In deciding whether substantial evidence supports the ALJ's decision, this Court

does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by The Courts" (internal quotation marks omitted)).

## IV. ANALYSIS

Plaintiff raises two related claims of error. He says that the ALJ's hypothetical to the vocational expert did not accurately portray his functional limitations because it did not account for

his anxiety or his testimony that he has cognitive difficulties. (Pl.'s Mot. Summ. J. at 10.) Plaintiff also argues that the VE's testimony was "inaccurate" because Plaintiff's own understanding of the three jobs that the VE identified, along with the Dictionary of Occupational Titles description of those jobs, suggests that they are beyond the hypothetical individual's limitations. (*Id.* at 8-10.) The Court finds that Plaintiff has not shown that the ALJ committed reversible error in either of these two ways.

Regarding the accuracy of the ALJ's hypothetical, Plaintiff correctly states that he testified to "difficulty" in "cognitive functioning":

> Q Mr. Burke, as far as your – the anxiety is concerned, have you noticed any difficulty with what is considered cognitive functioning; like memory, concentration, paying attention to things, completing tasks, stuff like that?
>
> A Yes, I have.

(Tr. 51.) Additionally, Plaintiff correctly implies that the ALJ did not include any mental limitation in his hypothetical to the VE. (*See* Tr. 56-57.)

But even granting Plaintiff's claim that the ALJ's omission was error, Plaintiff has not shown how that error affects the disability determination. The VE testified to "unskilled" jobs. (Tr. 56-57.) Mr. Jarvi found that Plaintiff's short- and long-term memory were intact and that his judgment and insight were good. (*Id.*) Dr. Imasa indicated that Plaintiff had only mild limitations in the ability to understand, remember, and carry out simple instructions, and only mild limitations in the ability to make judgments on simple work-related decisions. (Tr. 259.) There are no other mental or psychological evaluations in the record. Plaintiff has not shown that his testimony that he has "difficulty with what is considered cognitive functioning" — unadorned by any specifics — outweighs the findings of Mr. Jarvi and Dr. Imasa such that substantial evidence does not support

the ALJ's step-five finding that Plaintiff could perform the unskilled jobs identified by the VE.

Plaintiff's other argument also fails. Assuming, without deciding, that Plaintiff correctly asserts that his right-eye blindness precludes work as a small-products assembler, Plaintiff's arguments regarding the other two jobs the VE identified — which have significant availability (6,500 jobs in the regional economy), *see Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988); *Smith v. Soc. Sec. Admin.*, No. 3:10-0145, 2011 WL 795006, at *8 (M.D. Tenn. Mar. 1, 2011) — are based solely on speculation:

> The second job of hand packager according to the DOT, as cited by the VE, requires visually examin[ing] molded products for defects; [and] us[ing] gauges. The visual inspection *might*, again, be a problem since claimant has only one eye and no peripheral vision.
>
> The third job testified to, information clerk, requires [the] ability to furnish timetables; compute [a]nd quote[] rates for interline trips. While it is not specified in the DOT, this job also would entail using your eyesight for the entire time, and as the ALJ cited in the hearing, with only one eye this *could* overuse the other eye.

(Pl.'s Mot. Summ. J. at 9 (emphases added).)

This speculation does not demonstrate reversible error. First, the VE is assumed to be an expert about job requirements. *See Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980); *Atkins v. Astrue*, No. 3:07-00320, 2008 WL 4509141, at *7 (S.D.W. Va. Sept. 30, 2008). And Plaintiff, despite being given the opportunity, decided not to challenge the VE's qualifications. (Tr. 54.) Second, the ALJ asked the VE to consider a hypothetical individual who was limited in his ability to see, had "no sight at all out of the right eye," could not quickly see objects coming from the right, had limited peripheral vision, was capable of only frequent depth of field vision, had to avoid concentrated exposure to dusty environments, and had to avoid all exposure to hazardous work environments and unprotected heights. (Tr. 55-56.) Informed by these limitations and his

unchallenged expertise, the VE testified that the hypothetical individual could work as a hand packager and an information clerk. (Tr. 56-58.) Plaintiff's lay-person belief that visual inspection "might" be a problem, or that his one eye could be "overuse[d]," simply does not undermine expert testimony to the extent that it fails to substantially support the ALJ's step-five finding. *See Atkins*, 2008 WL 4509141, at *7 ("Plaintiff goes on to argue that if she could only occasionally handle objects, she could not perform some of the jobs cited by the vocational expert. As the Commissioner responded in his brief, however, plaintiff makes these assertions as a lay person and without pointing to any supporting information."). The latter argument is especially questionable given that Plaintiff witnessed the ALJ eliminating one of the VE's jobs because of eye strain, yet did not — at that time — raise the "overuse" argument to the ALJ or VE. Plaintiff has therefore failed to show that the "VE cited improper jobs" or that the jobs the VE cited "do not meet the hypothetical questions asked by the ALJ or as testified to by the claimant in the hearing." (*See* Pl.'s Mot. Summ. J. at 10.)

## V. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 9) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 10) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States*

*v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                            s/Laurie J. Michelson
                                                            LAURIE J. MICHELSON
                                                            UNITED STATES MAGISTRATE JUDGE

Dated: December 10, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 10, 2012.

                                                            s/Jane Johnson
                                                            Deputy Clerk